UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| AUSTIN JAMES PYRON,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br><br>HARBOR FREIGHT TOOLS USA, INC.,<br><br>　　　　　　Defendant. | Case No.: 3:23-cv-242-KHJ-MTP |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff **AUSTIN JAMES PYRON** ("Plaintiff" or "Austin"), by and through his undersigned counsel, **JOHNSON BECKER, PLLC** and **TYNES LAW FIRM, P.A.**, files this Complaint for the negligence, strict products liability and breach of express and implied warranties of the above-captioned Defendant **HARBOR FREIGHT TOOLS USA, INC.** ("Defendant Harbor Freight") and in support thereof, Plaintiff avers as follows:

**NATURE OF THE CASE**

1.　Defendant Harbor Freight operates roughly 1000 stores in at least 48 states, including Mississippi, that sell tools, including the "Pittsburgh Automotive" 3-ton jack stands, item number 61196 (hereafter referred to as the "subject jack stand(s)") at issue in this case.

2.　On or about April 13, 2020, the subject jack stand collapsed while Austin was working on his pickup. Without any warning, the right rear jack stand suddenly collapsed, causing Austin's left index finger to be smashed and trapped between the axle and the floor jack.

3. On or about May 3, 2020, Harbor Freight recalled[1] more than 1.2 million Pittsburgh Automotive 3 Ton Heavy Duty Steel Jack Stands manufactured between December 1, 2012 and December 1, 2019, which includes the subject jack stands, because of a defect involving the "product quality" that "was inconsistent due to aging of the tooling and inconsistent location indexing of the pawl armature hole."[2] The recall was issued in cooperation with the National Highway Traffic Safety Administration (NHTSA).

4. The "chronology" section of the Safety Recall Report (Exhibit A) notes that similar problems had arisen with Pittsburgh 6-ton jack stands, and were discovered through "analysis of customer feedback, Quality Assurance review of product returned to Distribution Centers, and review of online social media content." Defendant Harbor Freight initiated an investigation on January 21, 2020 that included additional internal quality maintenance testing on each of its jack stand models. Defendant Harbor Freight found "the test results indicated that, along with certain 6 ton jack stands, certain units of the 3 Ton Heavy Duty Steel Jack Stands … did not meet the test requirements for assured safety." *Id*. The decision to recall the subject jack stands was made on April 24, 2020 (*id*.), just 11 days after Austin was injured.

5. Defendant Harbor Freight manufactured these jack stands, including the subject jack stands, with a defect that made them inherently dangerous.

6. Plaintiff brings this case as a direct and proximate result of the negligence, strict products liability, and breach of express and implied warranties of Defendant Harbor Freight.

---

[1] *See* https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20E027-9959.PDF (last accessed April 5 2023). A copy of the Safety Recall Report is attached hereto as Exhibit A.
[2] *Id.*

2

## THE PARTIES

7. Plaintiff Austin James Pyron is a resident and citizen of the city of Florence, County of Rankin, State of Mississippi and is 27 years old.

8. Defendant Harbor Freight is a corporation existing under the laws of Delaware with its principal place of business located at 26565 Agoura Road in Calabasas, California 91302. Defendant Harbor Freight is a corporate citizen of Delaware and California. Defendant Harbor Freight is registered to do business in this state with the Mississippi Secretary of State's Office, and its registered agent for service of process is Corporate Creations Network Inc., 232 Market Street #1600, Flowood, MS 39232

## JURISDICTION AND VENUE

9. Defendant Harbor Freight advertises and sells goods in the State of Mississippi and has advertised and sold the type of Pittsburgh Automotive stands at issue in in this matter in the State of Mississippi.

10. Defendant Harbor Freight transacted and conducted business within the State of Mississippi that relates to the allegations in this Complaint.

11. Defendant Harbor Freight derived substantial revenue from goods and products sold and used in the State of Mississippi, including Pittsburgh Automotive stands.

12. Defendant Harbor Freight expected or should have expected its acts to have consequences within the State of Mississippi and derived substantial revenue from interstate commerce related to Pittsburgh Automotive jack stands.

13. Defendant Harbor Freight regularly and persistently engaged in the business of marketing, distributing, and/or selling Pittsburgh Automotive jack stands for use by consumers, including those within the State of Mississippi.

14. Defendant Harbor Freight is authorized to do business in the State of Mississippi and derives substantial income from doing business in this state.

15. Defendant Harbor Freight purposefully availed itself of the privilege of conducting activities within the State of Mississippi, thus invoking the benefits and protections of its laws.

16. At all times relevant herein, Defendant Harbor Freight conducted substantial business in Mississippi and purposely availed itself of the privilege of doing business in Mississippi by knowingly marketing, distributing, selling and shipping products, including Pittsburgh Automotive jack stands, into Mississippi for sale to consumers in this state. Further, this action arises from Defendant Harbor Freight's conduct directed toward Mississippi, arises from a tort committed in whole or in part within Mississippi, relates to Defendant Harbor Freight's regular and persistent manufacture, supply and sale of Pittsburgh Automotive jack stands, and resulted in injuries in Mississippi. Therefore, personal jurisdiction is proper as to Defendant Harbor Freight.

17. Jurisdiction over Defendant Harbor Freight is also proper under the due process provisions of the Mississippi and United States constitutions. *See e.g. Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

18. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

19. Venue of this action properly lies in the Southern District of Mississippi, pursuant to 28 U.S.C. § 1391(a), and within the Northern Division, as it is the judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred, in which

Defendant Harbor Freight does business relating to the allegations contained herein, and wherein Plaintiff resides.

## OPERATIVE FACTS

**A.   The Multiple "Pittsburgh Automotive" Jack Stand Recalls**

20.   Defendant Harbor Freight operates roughly 1000 stores in at least 48 states that sell tools, including jack stands labeled "Pittsburgh Automotive" that come in at least 3 varieties of 3-ton jack stands, item numbers 61196, 56371, and 56373, and one variety of six-ton jack stands, item number 61197.

21.   On or about March 20, 2020, Defendant Harbor Freight issued a recall[3] involving approximately 454,000 units of the Pittsburgh Automotive 6 Ton Heavy Duty Steel Jack Stands, item number 61197, manufactured between June 13, 2013 and November 22, 2019. These jack stands were recalled due to the "product quality" which was "inconsistent due to aging of the tooling."[4] The recall was issued in cooperation with the NHTSA.

22.   According to the recall notice[5], the jack stands were recalled because of a defect causing the potential for, while under load and with a shift in weight, the pawl of the jack stands to disengage from the extension lifting post, allowing the stand to drop suddenly, with the potential to injure or crush a person under the lifted car or truck, just as it did in this case.

23.   More specifically, for certain jack stand units, the ratchet teeth on the jack stand lifting extension post may inconsistently engage the pawl to a sufficient depth. *Id.*

---

[3] *See* https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20E016-6561.PDF (last accessed April 5, 2023).

[4] *Id.*

[5] *Id.*

5

24. On or about May 3, 2020, Defendant Harbor Freight recalled[6] more than 1.2 million Pittsburgh Automotive 3 Ton Heavy Duty Steel Jack Stands manufactured between December 1, 2012 and December 1, 2019, which includes the subject item number 61196 jack stands involved in this case. This recall was also issued in cooperation with the NHTSA.

25. The "chronology" section of the Safety Recall Report (Exhibit A) for the subject item number 61196 jack stands states that the same type of jack stand collapse that affects the 3-ton jack stands had affected the Pittsburgh 6-ton jack stands. The problem with the 6-ton jack stands was discovered by analyzing customer feedback, Quality Assurance review of returned products, and a review of social media content. An investigation was initiated by Defendant Harbor Freight on January 21, 2020. *Id*. That investigation included additional internal quality maintenance testing done by Defendant Harbor Freight on each of its jack stand models. Defendant Harbor Freight found "the test results indicated that, along with certain 6 ton jack stands, certain units of the 3 Ton Heavy Duty Steel Jack Stands … did not meet the test requirements for assured safety." *Id*. Defendant Harbor Freight decided to recall the subject jack stands on April 24, 2020 (*id*.), just 11 days after Austin was injured.

26. On or about July 7, 2020, Defendant Harbor Freight issued a third recall[7]; this time involving a "welding defect" in the *replacements* (item number 56373) for the previously recalled Pittsburgh Automotive 3 Ton Heavy Duty Jack Stands.

27. In response to that recall, Defendant Harbor Freight's CEO, Eric Schmidt, issued, in relevant part, the following statement:

> "I'm disappointed and embarrassed because we've identified a welding defect in a small number of the Pittsburgh 3 ton steel jack stands (SKU 56373) that replaced the recalled

---

[6] *Id.*

[7] *See* https://www.usatoday.com/story/money/2020/07/07/harbor-freight-jack-stands-recall/5393897002/ (last accessed April 5, 2023).

6

jack stands. We're now adding these jack stands to our recall. Unfortunately, this defect wasn't discovered during the initial recall investigation."[8]

28. On June 6, 2020, a class action lawsuit was filed against Defendant Harbor Freight concerning the defective "Pittsburgh Automotive" jack stands that have been recalled. The class action was filed in the Central District of California, and is titled *Mel Comes v. Harbor Freight Tools USA, Inc.* (Case No. 2:20-cv-05451-DMG-KK).

29. Since that time, multiple additional lawsuits have been filed around the country alleging defects in Defendant Harbor Freight's jack stands similar or identical to those referenced herein.

**B.  The Subject Jack Stand and Incident on April 13, 2020**

30. On or about April 13, 2020, Austin Pyron, was working on his pickup at 2058 Florence Byram Road. He used four of the subject jack stands to hold up his pickup.

31. Without any warning, the right rear jack stand suddenly collapsed, causing Austin's left index finger to be smashed and trapped between the rear axle and the floor jack that was beneath it.

32. It was immediately apparent that Austin needed professional medical care. He wanted to avoid the hospital because the Covid-19 pandemic had started, so he decided to go to his primary care clinic. Austin's mother was nearby and drove him to Baptist Medical Clinic for emergency medical treatment.

33. Austin was diagnosed with a left index open distal phalanx fracture. Surgical intervention was required.

---

[8] *See* https://milled.com/harbor-freight/important-safety-message-about-jack-stands-mZ0SghMWdwMGZO4J (last accessed March 24, 2021).

34. These jack stands, including the subject jack stand, are unsafe due to inconsistencies in manufacturing caused by aging in the tooling. These inconsistencies make the stands inherently dangerous because they can collapse under a load causing danger, injury or death to nearby individuals and damage to property. In addition, the jack stands, including the subject jack stands, had inconsistent location indexing of the pawl armature hole. See Exhibit A.

35. The failure and collapse of the jack stands results from a defect created during the manufacturing process. This created a latent defect that was not readily apparent to the consumer, including Austin Pyron, at the time of purchase.

36. Defendant Harbor Freight knew or should have known about the defective nature of its jack stands; yet failed to disclose this knowledge to hundreds or thousands of consumers, including Austin Pyron, which ultimately resulted in his injuries.

## CAUSES OF ACTION

### COUNT I

### STRICT PRODUCTS LIABILITY – MANUFACTURING, FAILURE TO WARN AND/OR DESIGN DEFECT

37. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein

38. Defendant Harbor Freight is strictly liable in tort, irrespective of privity, for its role in the design, testing, manufacture, packaging, labeling and sale of a defective and unreasonably dangerous product into the stream of commerce, which was a proximate cause of Plaintiff's injuries.

39. Defendant Harbor Freight had an active role in the design, testing, manufacture, packaging, labeling and sale of the Pittsburgh Automotive jack stands, including the one at issue.

40. The Pittsburgh Automotive jack stands were neither merchantable nor reasonably suited to the use intended when placed into commerce by Defendant Harbor Freight.

41. At all relevant times, including when the incident alleged herein occurred, the Pittsburgh Automotive jack stands were used in an intended and/or foreseeable manner.

42. Plaintiff neither misused nor materially altered the Pittsburgh Automotive jack stands, and at the time of the incident complained of herein, the Pittsburgh Automotive jack stands were in the same or substantially similar condition as at the time of sale.

43. As designed, tested, manufactured, packaged, labeled and sold, the Pittsburgh Automotive jack stands at issue failed to perform in a manner reasonably expected in light of their intended design, nature and function; indeed they performed in a manner fundamentally inconsistent with the expectations of a reasonable consumer.

44. These Harbor Freight jack stands, including the subject jack stands, are unsafe due to inconsistencies in manufacturing caused by aging in the tooling. These inconsistencies make the stands inherently dangerous because they can collapse under a load causing danger, injury or death to nearby individuals and damage to property; just as the subject jack stands did in this case. In addition, the three-ton jack stands, including the subject jack stands, had inconsistent location indexing of the pawl armature hole.

45. Defendant Harbor Freight knew or should have known about the defective nature of its jack stands; yet failed to disclose this knowledge to hundreds or thousands of consumers, including Austin, which ultimately resulted in his injuries.

46. As designed, tested, manufactured, packaged, labeled and sold by Defendant Harbor Freight, the Pittsburgh Automotive jack stands were in a defective condition and unreasonably dangerous to users and consumers, such as Austin.

47. The defective, unreasonably dangerous Pittsburgh Automotive jack stands, as designed, tested, manufactured, packaged, labeled and sold, failed in their essential purpose --- to uphold the weight of Plaintiff's vehicle so that he could perform maintenance on the vehicle --- and were a direct and proximate cause of the collapse of the vehicle onto Plaintiff's left index finger.

48. By reason of the foregoing, Plaintiff demands judgment against Defendant Harbor Freight for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT II

### NEGLIGENCE – MANUFACTURING, FAILURE TO WARN AND/OR DESIGN DEFECT

49. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

50. At all times material hereto, Defendant Harbor Freight owed Plaintiff a duty of reasonable care in the design, testing, manufacture, packaging, labeling, sale and/or placement into the stream of commerce of the Pittsburgh Automotive jack stands.

51. Defendant Harbor Freight designed, tested, manufactured, packaged, labeled, sold and/or placed into the stream of commerce the subject Pittsburgh Automotive jack stands, which were purchased by Plaintiff, in a defective condition unreasonably dangerous to foreseeable users.

52. The Pittsburgh Automotive jack stands were neither merchantable, nor reasonably suited for their intended, anticipated and/or foreseeable uses, when they were designed, tested,

manufactured, packaged, labeled and sold and/or otherwise placed into the stream of commerce by Defendant Harbor Freight.

53. The Pittsburgh Automotive jack stands were defective and unreasonably dangerous at the time they left the possession and control of Defendant Harbor Freight and they were expected to, and did, reach Plaintiff in substantially the same condition as they were in at the time they were designed, tested, manufactured, packaged. labeled and sold, and/or otherwise placed into the stream of commerce by Defendant Harbor Freight.

54. At all relevant times, including when the Incident alleged herein occurred, the Pittsburgh Automotive jack stands were used in a reasonable, intended, anticipated and/or foreseeable manner.

55. Plaintiff neither misused, nor materially altered the Pittsburgh Automotive jack stands, at any time.

56. At all times material hereto, Plaintiff exercised due care and was properly handling the Pittsburgh Automotive jack stands in a reasonable, intended, anticipated and/or foreseeable manner.

57. At all times material hereto, the actions and omissions of Defendant Harbor Freight were negligent, grossly negligent, willful, wanton, reckless and/or careless, and Defendant Harbor Freight breached duties owed to Plaintiff by, *inter alia*:

   a. Designing, testing, manufacturing, packaging, labeling and selling the Harbor Freight jack stands, including the subject jack stands, in a defective, unreasonably dangerous condition due to inconsistencies in manufacturing caused by aging in the tooling. These inconsistencies made the jack stands inherently dangerous because they can collapse under a load causing danger, injury or death to nearby individuals

and damage to property; just as the subject jack stands did in this case. In addition, the three-ton jack stands, including the subject jack stands, had inconsistent location indexing of the pawl armature hole;

b.  Designing, testing, manufacturing, packaging, labeling and selling the jack stands, including the subject jack stands, in a condition wherein they did not conform to their intended design or specifications;

c.  Designing, testing, manufacturing, packaging, labeling and selling the jack stands, including the subject jack stands, in a condition wherein they were not suitable for their intended purposes or able to support the loads anticipated while supporting vehicles; and

d.  In such other particulars as the evidence may show.

58.  Defendant Harbor Freight knew or should have known about the defective nature of its jack stands; yet failed to disclose this knowledge to hundreds or thousands of consumers, including Austin, which ultimately resulted in his injuries.

59.  By reason of the foregoing, Plaintiff demands judgment against Defendant Harbor Freight for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT III

### BREACH OF EXPRESS WARRANTY - MISS. CODE § 75-2-313

60.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

61. Defendant Harbor Freight designed, tested, manufactured, packaged, labeled, sold and/or placed into the stream of commerce the subject Pittsburgh Automotive jack stands, which were purchased by Plaintiff.

62. The Pittsburgh Automotive jack stands were defective and unreasonably dangerous at the time they left the possession and control of Defendant Harbor Freight, and they were expected to reach, and did reach, Plaintiff in substantially the same condition as they were in at the time they were designed, tested, manufactured, packaged, labeled and sold, and/or otherwise placed into the stream of commerce by Defendant Harbor Freight.

63. Defendant Harbor Freight expressly represented and warranted in its promotional literature, on the product box and in its store that the Pittsburgh Automotive jack stands, including the subject jack stands, would safely support and hold the weight commensurate with their 3-ton rating, and were therefore safe and free of unreasonably dangerous defects.

64. The failure of the subject jack stands to support the weight that Defendant Harbor Freight represented and warranted they would support breached express warranties pursuant to Miss. Code Ann. § 75-2-313.

65. Plaintiff's injuries were a direct and proximate result of the breach of express warranties by Defendant Harbor Freight in that the Pittsburgh Automotive 3-ton jack stands designed, tested, manufactured, packaged, labeled and sold, and/or otherwise placed into the stream of commerce by Defendant Harbor Freight, failed to hold the weight Defendant Harbor Freight represented and warranted they would hold, failed to properly function, and collapsed.

66. By reason of the foregoing, Plaintiff demands judgment against Defendant Harbor Freight for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if

applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY – MISS. CODE § 75-2-314

67. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

68. Defendant Harbor Freight designed, tested, manufactured, packaged, labeled, sold and/or placed into the stream of commerce the subject Pittsburgh Automotive jack stands, which were purchased by Plaintiff.

69. Defendant Harbor Freight operates roughly 1000 stores in at least 48 states, including Mississippi, and holds itself out as a reputable designer, tester, manufacturer, packager, labeler and seller of tools, including the Pittsburgh Automotive jack stands.

70. Plaintiff relied on Defendant Harbor Freight's reputation in selecting and purchasing the subject Pittsburgh Automotive jack stands.

71. Defendant Harbor Freight did not disclose that the Pittsburgh Automotive jack stands, including the subject jack stands, are unsafe due to inconsistencies in manufacturing caused by aging in the tooling. These inconsistencies make the stands inherently dangerous because they can collapse under a load causing danger, injury or death to nearby individuals and damage to property; just as the subject jack stands did in this case.

72. Defendant Harbor Freight did not disclose that the three-ton jack stands, including the subject jack stands, had inconsistent location indexing of the pawl armature hole.

73. The Pittsburgh Automotive jack stands were defective and unreasonably dangerous at the time they left the possession and control of Defendant Harbor Freight, and they were

14

expected to reach, and did reach, Plaintiff in substantially the same condition as they were in at the time they were designed, tested, manufactured, packaged, labeled and sold, and/or otherwise placed into the stream of commerce by Defendant Harbor Freight.

74. Plaintiff's injuries were a direct and proximate result of the breach of the implied warranty of merchantability by Defendant Harbor Freight in that the Pittsburgh Automotive 3-ton jack stands designed, tested, manufactured, packaged. labeled and sold, and/or otherwise placed into the stream of commerce by Defendant Harbor Freight did not conform to the promises or affirmations of fact made on the container or label for the jack stands, would not pass without objection in the trade because of their manufacturing defects, and were not fit for the ordinary purposes for which such goods are used.

75. The failure of the subject jack stands to function properly breached the implied warranties of merchantability and fitness pursuant to Miss. Code Ann. § 75-2-314.

76. By reason of the foregoing, Plaintiff demands judgment against Defendant Harbor Freight for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## INJURIES & DAMAGES

77. As a direct and proximate result of Defendant Harbor Freight's negligence and wrongful conduct as described herein, Plaintiff has suffered and will continue to suffer physical and emotional injuries and damages including past, present, and future physical and emotional pain and suffering as a result of the incident. Plaintiff is entitled to recover damages from Defendant Harbor Freight for these injuries in an amount which shall be proven at trial.

78. As a direct and proximate result of Defendant Harbor Freight's negligence and wrongful conduct, as set forth herein, Plaintiff has incurred and will continue to incur the loss of full enjoyment of life and disfigurement as a result of the incident. Plaintiff is entitled to recover damages for loss of the full enjoyment of life and disfigurement from Defendant Harbor Freight in an amount to be proven at trial.

79. As a direct and proximate cause of Defendant Harbor Freight's negligence and wrongful conduct, as set forth herein, Plaintiff has incurred medical treatment expenses and will continue to incur expenses for medical care and treatment, as well as other expenses, as a result of the injuries he suffered as a result of the incident. Plaintiff is entitled to recover damages from Defendant Harbor Freight for his past, present and future medical and other expenses in an amount which shall be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendant Harbor Freight as follows:

A. That Plaintiff has a trial by jury on all of the claims and issues;

B. That judgment be entered in favor of the Plaintiff and against Defendant Harbor Freight on all of the aforementioned claims and issues;

C. That Plaintiff recover all damages against Defendant Harbor Freight, general damages and special damages, including economic and non-economic, to compensate the Plaintiff for his injuries and suffering sustained because of the use of Defendant Harbor Freight's defective jack stands;

D. That Plaintiff be allowed to amend his complaint to include a claim for punitive damages against Defendant Harbor Freight, according to proof;

E. That all costs be taxed against Defendant Harbor Freight;

F. That prejudgment interest be awarded to Plaintiff according to proof; and

G. That this Court award Plaintiff any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all relief prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully submitted,

**TYNES LAW FIRM, P.A.**

Dated: April 6, 2023

*/s/ Douglas Tynes, Jr.*
Douglas Tynes, Jr.
P.O. Drawer 966
525 Krebs Ave.
Pascagoula, MS 39568-0966
(228) 769-7736
(228) 769-8466 fax
monte@tyneslawfirm.com

*In association with:*

**JOHNSON BECKER, PLLC**

Kenneth W. Pearson, Esq. (#016088X)
*Pro Hac Vice to be filed*
Adam J. Kress, Esq. (#0397289)
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
Phone: (612) 436-1800
kpearson@johnsonbecker.com
akress@johnsonbecker.com

***Attorneys for Plaintiff Austin Pyron***

17